# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BED BATH & BEYOND INC., a New York corporation; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ROBERT TURNIER, individually and on behalf of all others similarly situated

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/15/2020** at 11:52:44 AM
Clerk of the Superior Court
By Linda Sheffa, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | San Diego Superior Court<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER: *(Número del Caso):*<br>37-2020-00002499-CU-BT-CTL |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James T. Hannink (131747); Zach P. Dostart (255071); DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037

| DATE:<br>*(Fecha)* | 01/15/2020 | Clerk, by<br>*(Secretario)* | L. Sheffa<br>L. Sheffa | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Bed Bath & Beyond Inc., a New York Corporation

    under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
    ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
    ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
    ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>James T. Hannink (131747)<br>Zach P. Dostart (255071)<br>DOSTART HANNINK & COVENEY LLP<br>4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037<br>TELEPHONE NO.: (858) 623-4200   FAX NO.: (858) 623-4299<br>ATTORNEY FOR *(Name)*: Plaintiff | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/15/2020** at 11:52:44 AM<br><br>Clerk of the Superior Court<br>By Linda Sheffa, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92010
BRANCH NAME: Hall of Justice

CASE NAME:
Turnier v. Bed Bath & Beyond Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ✔ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2020-00002499-CU-BT-CTL |
| | | | JUDGE: Judge Richard S. Whitney |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ✔ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ✔ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ✔ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ✔ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ✔ monetary   b. ✔ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify)*: 1) Violation of ARL; 2) Violation of CLRA; 3) Unfair Competition; and
5. This case ✔ is ☐ is not a class action suit. 4) Unjust Enrichment
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 15, 2020

Zach P. Dostart
_____   ▶ _____
(TYPE OR PRINT NAME)            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]   **CIVIL CASE COVER SHEET**   Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1    JAMES T. HANNINK (131747)
     jhannink@sdlaw.com
2    ZACH P. DOSTART (255071)
     zdostart@sdlaw.com
3    DOSTART HANNINK & COVENEY LLP
     4180 La Jolla Village Drive, Suite 530
4    La Jolla, California 92037-1474
     Tel: 858-623-4200
5    Fax: 858-623-4299

6    Attorneys for Plaintiff

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/15/2020** at 11:52:44 AM

Clerk of the Superior Court
By Linda Sheffa, Deputy Clerk

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF SAN DIEGO

10

| | |
|---|---|
| 11   ROBERT TURNIER,<br>individually and on behalf of all others<br>12   similarly situated,<br><br>13           Plaintiff,<br><br>14   vs.<br><br>15   BED BATH & BEYOND INC.,<br>a New York corporation; and<br>16   DOES 1-50, inclusive,<br><br>17          Defendants.<br><br>18 | CASE NO.   37-2020-00002499-CU-BT-CTL<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>(1) FALSE ADVERTISING – VIOLATION OF<br>THE CALIFORNIA AUTOMATIC RENEWAL<br>LAW<br>[Bus. & Prof. Code, §§ 17600 et seq. & 17535];<br><br>(2) VIOLATION OF THE CALIFORNIA<br>CONSUMERS LEGAL REMEDIES ACT<br>[Civ. Code, § 1750 et seq.];<br><br>(3) UNFAIR COMPETITION<br>[Bus. & Prof. Code, § 17200 et seq.]; AND<br><br>(4) UNJUST ENRICHMENT.<br><br>DEMAND FOR JURY TRIAL |

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.    This class action complaint alleges that defendant Bed Bath & Beyond Inc. ("BB&B") violates California law in connection with a subscription program operated under the name BEYOND+.   Among other things, BB&B enrolls consumers in automatic-renewal or continuous service subscriptions without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported automatic renewal or continuous service subscriptions without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL") (which is part of California's False Advertising Law), the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

**THE PARTIES**

2.    Plaintiff Robert Turnier ("Turnier") is an individual residing in San Diego County, California.

3.    Plaintiff is informed and believes and thereon alleges that defendant Bed Bath & Beyond Inc. ("BB&B") is a New York corporation that does business in San Diego County, including the marketing and sale of household merchandise.

4.    Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known.   Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with the named defendant in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other defendants.   For ease of reference, Plaintiff will refer to the named defendant and the DOE defendants collectively as "Defendants."

5.    Venue is proper in this judicial district because Defendants do business in this judicial district and a material part of the complained of conduct occurred in this judicial district.

CLASS ACTION COMPLAINT

**SUMMARY OF APPLICABLE LAW**

6.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law.  (Bus. & Prof. Code, § 17600 *et seq*. (the California Automatic Renewal Law or "ARL").)  (Unless otherwise stated, all statutory references are to the Business & Professions Code).  SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 1 at p. 7.)

7.     The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are charged for renewal purchases without their consent or knowledge.  For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 2 at p. 11.)

8.     The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer.  To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a.     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other

3

1 marks, in a manner that clearly calls attention to the language." (§ 17601(c).) "In the case of an
2 audio disclosure, 'clear and conspicuous' … means in a volume and cadence sufficient to be
3 readily audible and understandable." (*Ibid.*) The statute defines "automatic renewal offer terms"
4 to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or
5 purchasing agreement will continue until the consumer cancels; (b) the description of the
6 cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the
7 consumer's credit or debit card or payment account with a third party as part of the automatic
8 renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and
9 the amount to which the charge will change, if known; (d) the length of the automatic renewal
10 term or that the service is continuous, unless the length of the term is chosen by the consumer; and
11 (e) the minimum purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

12         b.    Charge the consumer's credit or debit card or the consumer's account with a
13 third party for an automatic renewal or continuous service without first obtaining the consumer's
14 affirmative consent to the agreement containing the automatic renewal offer terms or continuous
15 service offer terms, including the terms of an automatic renewal offer or continuous service offer
16 that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code
17 § 17602(a)(2).)

18         c.    Fail to provide an acknowledgment that includes the automatic renewal or
19 continuous service offer terms, cancellation policy, and information regarding how to cancel in a
20 manner that is capable of being retained by the consumer. (Bus. & Prof. Code, § 17602(a)(3).)
21 Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free
22 telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use"
23 mechanism for cancellation.

24     9.    If a business sends any goods, wares, merchandise, or products to a consumer
25 under a purported automatic renewal or continuous service arrangement without first obtaining the
26 consumer's affirmative consent to an agreement containing the "clear and conspicuous"
27 disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to
28 be an unconditional gift to the consumer, who may use or dispose of them without any obligation

4

1  whatsoever.  (Bus. & Prof. Code, § 17603.)  Violation of the ARL gives rise to restitution and

2  injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof.,

3  Code § 17535.  (Bus. & Prof. Code, § 17604(a).)  As well, violation of the ARL gives rise to

4  restitution and injunctive relief under the UCL.

5                          **FACTS GIVING RISE TO THIS ACTION**

6          10.    In or about August 2018, while Plaintiff was in San Diego County, he purchased an

7  item of merchandise through BB&B's website.  Plaintiff paid for that purchase by entering his

8  credit card information as part of the website check-out process.

9          11.    The following year, in or about August 2019, Plaintiff noticed a charge of $29.00

10  on his credit card statement, which was posted by BB&B.

11          12.    Plaintiff is informed and believes and thereon alleges that the $29.00 charge that

12  BB&B posted to his credit card in or about August 2019 was for purported renewal of a

13  BEYOND+ membership.  Plaintiff did not authorize or consent to that charge.

14          13.    If Plaintiff had known that Defendants were going to enroll him in an automatically

15  renewing membership program that would result in subsequent charges, Plaintiff would have

16  either not purchased the merchandise from BB&B in the first place or would have taken other

17  steps to avoid becoming enrolled in such a membership program, such that Plaintiff would not

18  have paid money to Defendants for such program.

19                          **BB&B'S DECEPTION OF CONSUMERS**

20          14.    When a consumer selects an item to purchase online through the BB&B website,

21  the website walks the consumer through a purchase sequence.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

CLASS ACTION COMPLAINT

15.    The first screen ("Screen 1") is a review of the consumer's order.  In the "Order Summary" box, the consumer is provided with two different prices: the regular "Order Subtotal" price, and a discounted "BEYOND+ Member Price," as shown below:



16.    If the consumer clicks the "Join Now" link next to the BEYOND+ Member Price, he or she is presented with another screen ("Screen 2") that invites the consumer to become a BEYOND+ member.  Screen 2 indicates that for $29.00, BEYOND+ members receive a 20% discount on every purchase for one year, as well as free standard shipping.



CLASS ACTION COMPLAINT

17.   If the consumer clicks the "Sign Me Up" button on Screen 2, he or she is then presented with a screen for entry of name and contact information ("Screen 3"), as shown below:

**Billing Address**

First Name                          Last Name

Company (Optional)

Country
United States                                          ⌄

Street Address

Apt/Suite/Floor (Optional)

City                          State ⌄      Zip Code

**Contact Information**

Phone Number, maximum 10 i

**Terms and Conditions**

☐  I accept the terms and conditions of the program

**Review**

BEYOND- 1 Year Membership

18.   From the foregoing, it is evident that there is no clear and conspicuous disclosure of automatic renewal offer terms as required by the ARL.

19.   Plaintiff is not the only consumer to be victimized by Defendants in connection with the BEYOND+ membership.   There are numerous complaints about BB&B posted on a variety of websites, including but not limited to the Better Business Bureau, Complaints Board,

7

1    and pissedconsumer.com.[1]

2        20.    On the Better Business Bureau website, an illustrative complaint about another

3    consumer's experience with Defendants' membership program is as follows:

4        **Complaint Type: Guarantee/Warranty Issues (August 2, 2019).** I was pressed
         into a one year membership in order to receive a discount for a large one time
5        purchase. I told salesperson I would only agree if it was not the auto renew deal
         scam most of them use unless you clarify. I was told it would be set up as
6        requested. I refuse to join these scams otherwise. My girlfriend was my witness as
         she does the same. They lied and just helped themselves to my **** card. Upon
7        requesting they reverse and cancel they said it was impossible.

8    A true and correct printout of that complaint is attached as Exhibit 3.

9        21.    On the Complaints Board website, an illustrative complaint about the BB&B

10   membership program is as follows:

11       **Sam1981.  Bed Bath & Beyond – one year bed bath and beyond membership
         (June 14, 2018).** I went online to order Bona Hardfloor cleaning liquid, all of
12       sudden I saw an item added to the cart for one year Bed Bath and Beyond
         Membership. I am not sure how that got added, I did not realize and made the
13       payment thinking that I bought Bona Hardfloor cleaning liquid. After few days, I
         did not see anything shipment, went back to my account and saw that I purchased
14       one year membership.

15       I called the customer service and they said they will refund the money, but they
         called after few days and said they can't cancel the membership because I bought a
16       product with that membership. Once you said you cancelled the membership, isn't
         that your responsibility to remove that from my account. How am I supposed to
17       know that I can't buy anything with my account until you cancel the one year
         membership.

18
         I am really annoyed with this, I don't need the membership and please refund my
19       money.

20   A true and correct printout of that complaint is attached as Exhibit 4.

21

22

23

24   _____

25   [1] Better Business Bureau reviews are available at
     https://www.bbb.org/us/nj/union/profile/linens/bed-bath-beyond-inc-0221-18001225/complaints
26   (as of January 13, 2020); Complaints Board reviews are available at
     https://www.complaintsboard.com/?search=Bed+Bath+%26+Beyond (as of January 13, 2020);
27   Pissed Consumer reviews are available at https://bed-bath-and-
     beyond.pissedconsumer.com/review.html (as of January 13, 2020).

28

CLASS ACTION COMPLAINT

22.     On the Pissed Consumer website, two illustrative consumer complaints about BB&B's membership program are as follows:

**Diane D.  Bed Bath and Beyond - CREDIT (April 15, 2018).**  I ordered what I believed was an item online.  When I never received it and contacted customer service I was told it was delivered and that it was a $29.99 membership I purchased.

I asked for a credit back on my card.  It took 6 phone calls back and still no refund.  I was told in the first call a credit would be put on usually the following day, the second and third calls were the credit has been issued the fourth I was told to read the tiny fine print online it states no refund.  The fifth was a supervisor who apologized and said a refund would be issued.  The final sixth was Tom who assured me of this credit, apologized and actually gave me a personal contact (or could be made up I never even called at this point)

So I still have no credit.

To go into a store and purchase is no problem, I suggest you never order online.

A true and correct printout of that complaint is attached as Exhibit 5.

**Heidi N. Bed Bath and Beyond "club" (March 19, 2018).**  ordered something online and got rooked into signing up for their CLUB!!!  What an fin.......rip off for sure...No refund available, per nancy....  Very Pissed!!!!  I will not be a bb&b shopper any longer, so buyer beware!! I guess they are trying to be like amazon with their yearly fee.....

Not happening.. I hope everyone is very cautious when shopping online with this store.

Not very cooperative as far as getting refunded.  I really did not need more of their coupons, for sure.

I guess they had to figure out a way to make up for people not shopping their without a coupon. That is for sure.......

A true and correct printout of that complaint is attached as Exhibit 6.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of the following Class: "All individuals in California who, within the applicable limitations period, were enrolled by Defendants in the BEYOND+ membership program. Excluded from the Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned."

9

CLASS ACTION COMPLAINT

24. <u>Ascertainability</u>.  The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' customer, order, and billing records.

25. <u>Common Questions of Fact or Law</u>.  There are questions of fact or law that are common to the members of the Class, which predominate over individual issues.  Common questions regarding the Class include, without limitation: (1) whether Defendants present all statutorily-mandated automatic renewal or continuous service offer terms, within the meaning of § 17601(b); (2) whether Defendants present automatic renewal or continuous service offer terms in a manner that is "clear and conspicuous," within the meaning of § 17601(c), and in "visual proximity" to a request for consent to the offer (or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the offer), as required by § 17602; (3) whether Defendants obtain consumers' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal or continuous service offer terms before charging a credit card, debit card, or third-party payment account; (4) whether Defendants provide consumers with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-mandated automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer; (5) Defendants' record-keeping practices; (6) the appropriate remedies for Defendants' conduct; and (7) the appropriate terms of an injunction.

26. <u>Numerosity</u>.  The Class is so numerous that joinder of all Class members would be impracticable.  Plaintiff is informed and believes and thereon alleges that the Class consists of at least 100 members.

27. <u>Typicality and Adequacy</u>.  Plaintiff's claims are typical of the claims of the Class members.  Plaintiff alleges on information and belief that Defendants enrolled Plaintiff and Class members in automatic renewal or continuous service programs without disclosing all terms required by law, and without presenting such terms in the requisite "clear and conspicuous" manner; charged Class members' credit cards, debit cards, or third-party accounts without first obtaining Class members' affirmative consent to an agreement containing clear and conspicuous

10

1 | disclosure of all automatic renewal offer terms in the manner required by California law; and
2 | failed to provide the requisite acknowledgment with the required disclosures and information.
3 | Plaintiff has no interests that are adverse to those of the other Class members. Plaintiff will fairly
4 | and adequately protect the interests of the Class members.

5 |      28.    <u>Superiority</u>.   A class action is superior to other methods for resolving this
6 | controversy. Because the amount of restitution to which the Class member may be entitled is low
7 | in comparison to the expense and burden of individual litigation, it would be impracticable for
8 | Class members to redress the wrongs done to them without a class action forum. Furthermore, on
9 | information and belief, Class members do not know that their legal rights have been violated.
10 | Class certification would also conserve judicial resources and avoid the possibility of inconsistent
11 | judgments.

12 |      29.    <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants
13 | have acted on grounds that are generally applicable to the Class, thereby making appropriate final
14 | injunctive relief and/or declaratory relief with respect to the Class as a whole.

15 | **FIRST CAUSE OF ACTION**

16 | False Advertising - Violation of the California Automatic Renewal Law

17 | (Bus. & Prof. Code, § 17600 et seq.)

18 |      30.    Plaintiff incorporates the previous allegations as though set forth herein.

19 |      31.    Plaintiff is informed and believe and thereon allege that, during the applicable
20 | statute of limitations period, Defendants have enrolled consumers, including Plaintiff and Class
21 | members, in automatic renewal programs and/or continuous service programs and have (a) failed
22 | to present the automatic renewal or continuous service offer in a clear and conspicuous manner
23 | before the subscription or purchasing agreeing is fulfilled and in visual proximity, or in the case of
24 | an offer conveyed by voice, in temporal proximity, to the request for consent to the offer;
25 | (b) charged the consumer's credit or debit card or the consumer's third-party payment account for
26 | an automatic renewal or continuous service without first obtaining the consumer's affirmative
27 | consent to an agreement containing clear and conspicuous disclosure of the automatic renewal or
28 | continuous service offer terms; (c) failed to provide an acknowledgment that includes clear and

11

1 | conspicuous disclosure of all automatic renewal or continuous service offer terms, the cancellation

2 | policy, and information regarding how to cancel.

3 |     32.    Plaintiff has suffered injury in fact and lost money as a result of Defendants'

4 | violations of the ARL.

5 |     33.    Pursuant to Bus. & Prof. Code §§ 17603 and 17535, Plaintiff and Class members

6 | are entitled to restitution of all amounts that Defendants charged to Plaintiff's and Class members'

7 | credit cards, debit cards, or third-party payment accounts for BEYOND+ membership during the

8 | four years preceding the filing of this Complaint and continuing until Defendants' statutory

9 | violations cease.

10 |     34.    Unless enjoined and restrained by this Court, Defendants will continue to commit

11 | the violations alleged herein.  Pursuant to § 17535, Plaintiff and the Class members are entitled to

12 | an injunction enjoining Defendants from making membership program offers and/or posting

13 | charges to a credit card, debit card, or third party payment account without first complying with

14 | California law.  Plaintiff reserves the right to seek other prohibitory or mandatory aspects of

15 | injunctive relief, whether on behalf of Plaintiff, the Class, and/or for the benefit of the general

16 | public of the State of California.

17 | **SECOND CAUSE OF ACTION**

18 | Violation of the California Consumers Legal Remedies Act

19 | (Civ. Code, § 1750 et seq.)

20 |     35.    Plaintiff incorporates the allegations of paragraphs 1-28 as though set forth herein.

21 |     36.    Plaintiff and the Class members are "consumers" within the meaning of Civil Code

22 | § 1761(d) in that the goods and/or services sought or acquired were for personal, family, or

23 | household purposes.

24 |     37.    Defendants' merchandise and membership program are "goods" or "services"

25 | within the meaning of Civil Code § 1761, subdivisions (a) and (b).

26 |     38.    The purchases and payments by Plaintiff and Class members are "transactions"

27 | within the meaning of Civil Code § 1761(e).

28 |

39.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13), (a)(14), and (a)(17), by representing that Defendants' goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and by representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

40.     On behalf of himself, all Class members, and the general public of the State of California, Plaintiff seeks an injunction prohibiting Defendants from continuing their unlawful practices in violation of the Consumers Legal Remedies Act, as described above.

## THIRD CAUSE OF ACTION

Violation of the California Unfair Competition Law

(Bus. & Prof. Code, § 17200 et seq.)

41.     Plaintiff incorporates the previous allegations as though fully set forth herein.

42.     The California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, defines unfair competition as including "any unlawful, unfair or fraudulent business act or practice."

43.     In the course of conducting business within the applicable limitations period, Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, *inter alia* and without limitation: (a) failing to present the terms of automatic renewal or continuous service offers in a clear and conspicuous manner before a purchasing agreement is fulfilled and in visual proximity (or in the case of an offer conveyed by voice, in temporal proximity), to a request for consent to the offer, in violation of Bus. & Prof. Code § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of automatic renewal offer terms or continuous service offer

1    terms, in violation of Bus. & Prof. Code § 17602(a)(2); (c) failing to provide an acknowledgment

2    that includes clear and conspicuous disclosure of automatic renewal or continuous service offer

3    terms, cancellation policy, and information regarding how to cancel in a manner that is capable of

4    being retained by the consumer, in violation of Bus. & Prof. Code § 17602(a)(3); (d) representing

5    that Defendants' goods and services have certain characteristics that they do not, in violation of

6    Civil Code § 1770(a)(5); (e) advertising goods and services with the intent not to sell them as

7    advertised, in violation of Civil Code § 1770(a)(9); (f) making false and misleading statements of

8    fact concerning the reasons for, existence of and amounts of price reductions, in violation of Civil

9    Code § 1770(a)(13); (g) representing that a transaction confers or involves rights, remedies, or

10   obligations that it does not have or involve, or that are prohibited by law, in violation of Civil

11   Code § 1770 (a)(14); and (h) representing that the consumer will receive a rebate, discount, or

12   other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent

13   to the consummation of the transaction, in violation of Civil Code § 1770(a)(17).   Plaintiff

14   reserves the right to allege other violations of law that constitute unlawful or unfair business acts

15   or practices.

16        44.    Defendants' acts and omissions as alleged herein violate obligations imposed by

17   statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

18   oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

19   attributable to such conduct.

20        45.    There were reasonably available alternatives to further Defendants' legitimate

21   business interests, other than the conduct described herein.

22        46.    Defendants' acts, omissions, nondisclosures, and statements as alleged herein were

23   and are false, misleading, and/or likely to deceive the consuming public.

24        47.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of

25   unfair competition.

26        48.    Pursuant to § 17203, Plaintiff and the Class members are entitled to restitution of

27   all amounts paid to Defendants for BEYOND+ membership in the four years preceding the filing

28   of this Complaint and continuing until Defendants' acts of unfair competition cease.

49.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein.  Pursuant to § 17203, Plaintiff and the Class members are entitled to an injunction enjoining Defendants from committing acts of unfair competition alleged above. Plaintiff reserves the right to seek other prohibitory or mandatory aspects of injunctive relief, whether on behalf of Plaintiff, the Class, and/or for the benefit of the general public of the State of California.

### FOURTH CAUSE OF ACTION

Unjust Enrichment

50.     Plaintiff incorporates the previous allegations as though fully set forth herein.

51.     Defendants have received money from Plaintiff and Class members in connection with Defendants' conduct in violation of California law.  Defendants would be unjustly enriched if they were permitted to retain those funds, and Defendants should be ordered to restore said funds to Plaintiff and the Class members.

52.     Plaintiff alleges this unjust enrichment claim in the alternative to relief provided under any legal claim alleged herein.

### PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On the First Cause of Action:

1.     For restitution;

2.     For injunctive relief, including a public injunction for the benefit of the People of the State of California;

On the Second Cause of Action:

3.     For injunctive relief, including a public injunction for the benefit of the People of the State of California;

4.     For reasonable attorneys' fees, pursuant to Civil Code § 1780(e);

On the Third Cause of Action:

5.     For restitution;

15

CLASS ACTION COMPLAINT

6.      For injunctive relief, including a public injunction for the benefit of the People of the State of California;

On the Fourth Cause of Action:

7.      For restitution;

On All Causes of Action:

8.      For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

9.      For costs of suit;

10.     For pre-judgment interest; and

11.     For such other relief as the Court may deem just and proper.

Dated: January 15, 2020                    DOSTART HANNINK & COVENEY LLP

_____
ZACH P. DOSTART
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable.

Dated: January 15, 2020                    DOSTART HANNINK & COVENEY LLP

_____
ZACH P. DOSTART
Attorneys for Plaintiff

9056242

CLASS ACTION COMPLAINT

Exhibit 1

SENATE JUDICIARY COMMITTEE
Senator Ellen M. Corbett, Chair
2009-2010 Regular Session

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

### SUBJECT

Advertising:  Automatic Renewal Purchases

### DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and
conspicuously state the automatic renewal offer terms and obtain the customer's
affirmative consent to those terms before fulfilling any subscription or purchasing
agreement on an automatic renewal basis.  This bill would also require all marketing
materials to clearly and conspicuously display a toll-free telephone number, if available,
telephone number, postal address, or electronic mechanism the customer could use for
cancellation.

This bill would require the order form to clearly and conspicuously disclose that the
customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over
the telephone or on an Internet Web page.

(This analysis reflects author's amendments to be offered in committee.)

### BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or
provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to
close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase
agreements for products and services, consumer complaints began to surface regarding
those automatic renewals.  Consumers complained that they were unaware of and had

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Exhibit 1
Page 1

not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case. After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers. Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals. (*See* Comment 2 for details.)

## CHANGES TO EXISTING LAW

Existing law, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA). (Bus. & Prof. Code Sec. 17200 et seq.)

Existing law, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price. (Bus. & Prof. Code Sec. 17500.)

Existing law provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both. (Bus. & Prof. Secs. 17500, 17534.)

Existing law provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Bus. & Prof. Code Sec. 17536.)

Existing law provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Bus. & Prof. Code Sec. 17204.)

Existing law provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Exhibit 1
Page 2

SB 340 (Yee)
Page 3 of 7

This bill would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.        All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.        Both of the following:

a. on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and

b. the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

This bill would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

This bill would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

This bill would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information. The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

This bill would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order. In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms. The automatic

(800) 666-1917   LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 3

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

This bill would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

This bill would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

This bill would define key terms, including "automatic renewal" and "automatic renewal terms." (*See* Comment 4.)

<b><u>COMMENT</u></b>

1.  <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations. The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions. The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Exhibit 1
Page 4

### 2. Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers. Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science. Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers. The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election." The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal. (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time. In the Assurance, Time agreed to:

- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer. Senate Bill 340 is modeled in large part after the Assurance.

### 3. Remedies available under the bill

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.

(800) 666-1917   LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 5

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4. Key terms defined

This bill would define the following key terms:
    a. "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
    b. "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.

    c. "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
    d. "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5. Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices. The rule requires, among other things, that telemarketers make

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Exhibit 1
Page 6

and maintain an audio recording of all telephone solicitations. (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6. Author's amendments

On page 3, line 17, insert:
(c) "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.

Support:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

Opposition:  None Known

## HISTORY

Source:  Author

Related Pending Legislation:  None Known

Prior Legislation:  None Known

************

Exhibit 1
Page 7

Exhibit 2

Date of Hearing: June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE: 37-0

SUBJECT: AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE: SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN "AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES, AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC RENEWAL?

FISCAL EFFECT: As currently in print this bill is keyed non-fiscal.

**SYNOPSIS**

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal. Indeed, this problem led 23 state attorneys general to launch an investigation of Time, Inc., in response to claims that the company used deceptive practices in signing up customers for automatic subscription renewals. As part of a settlement of this dispute, Time agreed to institute new practices so that customers are fully aware of and affirmatively consent to automatic renewals. This bill, following the lead of the Times' settlement, would require that renewal terms and cancellation policies be clearly and conspicuously presented to the consumer, whether the offer is made on printed material or through a telephone solicitation. In addition, the bill would require that the consumer make some affirmative acknowledgement before an order with an automatic renewal can be completed. Finally, the bill specifies that violation of the bill's provisions do not constitute a crime. The author has worked closely with affected business interests and has made several amendments that appear to address all stakeholders' concerns. There is no registered opposition to the bill.*

SUMMARY: Requires any business making an "automatic renewal" or "continuous service" offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the consumer's affirmative consent to the offer. Specifically, this bill:

1) Makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer to do any of the following:

(800) 666-1917   LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 8

a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed. Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

EXISTING LAW:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA). (Business & Professions Code Section 17200 *et seq*.)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Exhibit 2
Page 9

statement as part of a plan or scheme to sell goods or services at other than the stated or
advertised price. (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor. (Business & Professions Code
sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty
not to exceed $2,500 for each violation that must be assessed and recovered in a civil action
by the Attorney General or by any district attorney, county counsel, or city attorney.
(Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a
result of unfair competition may bring a civil action for relief. (Business & Professions Code
section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA
violations. (Business & Professions Code sections 17203, 17206.)

COMMENTS: This non-controversial bill is a response to reported consumer complaints that
certain businesses, especially those offering magazine subscriptions or other potentially
continuous services, lure customers into signing up for "automatic renewals" without the
consumer's full knowledge or consent. This bill seeks to address this problem by requiring clear
disclosures and affirmative acts of customer consent. The author states:

> It has become increasingly common for consumers to complain about unwanted
> charges on their credit cards for products or services that the consumer did not
> explicitly request or know they were agreeing to. Consumers report they believed
> they were making a one-time purchase of a product, only to receive continued
> shipments of the product and charges on their credit card. These unforeseen charges
> are often the result of agreements enumerated in the 'fine print' on an order or
> advertisement that the consumer responded to. The onus falls on the consumer to
> end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation
brought by the attorneys general of 23 states, including California, against Time, Inc. The
investigations found that subscribers to several magazines published by Time, Inc. were
discovering that their subscriptions were automatically renewed even though the customers
claimed that they had never knowingly consented to the renewals. In 2006, the investigation
resulted in a settlement agreement between the Attorneys General and Time that requires Time to
more clearly disclose renewal terms and ensure that the consumer take some affirmative step to
acknowledge consent or rejection of the automatic renewal offer. According to the author, the
specific disclosure and consent requirements in this measure are modeled after, though not
identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT: According to the California Public Interest Research Group
(CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if
they want to." According to the Consumer Federation of California, this measure will curb
deceptive marketing practices that are used to sell everything from magazine subscriptions to
"free trial" offers that lock consumers into an ongoing purchase agreement. Supporters generally

(800) 666-1917   LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 10

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>: The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>: AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call. (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>: Thomas Clark / JUD. / (916) 319-2334



(800) 666-1917    LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 11

Exhibit 3

**Complaint Type:** Guarantee/Warranty Issues      **Status:** Answered ⑦



08/02/2019

I was pressed into a one year membership in order to receive a discount for a large one time purchase. I told salesperson I would only agree if it was not the auto renew deal scam most of them use unless you clarify. I was told it would be set up as requested. I refuse to join these scams otherwise. My girlfriend was my witness as she does the same. They lied and just helped themselves to my **** card. Upon requesting they reverse and cancel they said it was impossible.

Exhibit 3
Page 12

Exhibit 4

# Bed Bath & Beyond — one year bed bath and beyond membership



 Sam1981 · Jun 14, 2018

Hello,

I went online to order Bona Hardfloor cleaning liquid, all of sudden I saw an item added to the cart for one year Bed Bath and Beyond Membership. I am not sure how that got added, I did not realize and made the payment thinking that I bought Bona Hardfloor cleaning liquid. After few days, I did not see anything shipment, went back to my account and saw that I purchased one year membership.

I called the customer service and they said they will refund the money, but they called after few days and said they can't cancel the membership because I bought a product with that membership. Once you said you cancelled the membership, isn't that your responsibility to remove that from my account. How am I supposed to know that I can't buy anything with my account until you cancel the one year membership.

I am really annoyed with this, I don't need the membership and please refund my money.

Thanks
Sampath

Exhibit 4
Page 13

Exhibit 5

# Bed Bath and Beyond - CREDIT

Apr 15, 2018

⁀⁚ ⁝⁝ ⁚⁚⁚   **1.3**  Details                                                                2 comments

I ordered what I believed was an item online. When I never received it and contacted customer service I was told it was delivered and that it was a $29.99 membership I purchased.

⁝ Related: Defective product and would not help. - Bed Bath and Beyond

I asked for a credit back on my card. It took 6 phone calls back and still no refund. I was told in the first call a credit would be put on usually the following day, the second and third calls were the credit has been issued the fourth I was told to read the tiny fine print online it states no refund. The fifth was a supervisor who apologized and said a refund would be issued. The final sixth was Tom who assured me of this credit, apologized and actually gave me a personal contact (or could be made up I never even called at this point)

So I still have no credit.

To go into a store and purchase is no problem, I suggest you never

order online. Diane

Product or Service Mentioned: Bed Bath And Beyond Customer Care.

Reason of review: Poor customer service.

Monetary Loss: $2995.

Preferred solution: Full refund.

Exhibit 5
Page 14

Exhibit 6

# Bed Bath and Beyond "club"

Mar 19, 2018

⁙⁙⁙   ᐧ ᐧᐧ   **1.0**  Details                                                          0 comments

ordered something online and got rooked into signing up for their CLUB!!! What an fin.......

| Related: WORST CUSTOMER SERVICE - WORST ONLINE SHOPPING EXPERIENCE - Bed Bath and Beyond

rip off for sure...No refund available, per nancy.... Very Pissed!!!! I will not be a bb&b shopper any longer, so buyer beware!! I guess they are trying to be like amazon with their yearly fee.....

Not happening.. I hope everyone is very cautious when shopping online with this store.

Not very cooperative as far as getting refunded. I really did not need more of their coupons, for sure.

I guess they had to figure out a way to make up for people not shopping their without a coupon. That is for sure.......

Product or Service Mentioned: Bed Bath And Beyond Customer Care.

Reason of review: bed bath & beyond club.

Monetary Loss: $29.

Preferred solution: Full refund.

Bed Bath and Beyond Cons: Nancy was very rude.

Exhibit 6
Page 15

1   JAMES T. HANNINK (131747)
    jhannink@sdlaw.com
2   ZACH P. DOSTART (255071)
    zdostart@sdlaw.com
3   DOSTART HANNINK & COVENEY LLP
    4180 La Jolla Village Drive, Suite 530
4   La Jolla, California 92037-1474
    Tel:  858-623-4200
5   Fax:  858-623-4299

6   Attorneys for Plaintiff

7

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**01/15/2020** at 11:52:44 AM

Clerk of the Superior Court
By Linda Sheffa, Deputy Clerk

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF SAN DIEGO

10

11  ROBERT TURNIER,                      CASE NO.   37-2020-00002499-CU-BT-CTL
    individually and on behalf of all others
12  similarly situated,                  **DECLARATION OF ROBERT TURNIER
                                         PURSUANT TO CALIFORNIA CIVIL
13          Plaintiff,                   CODE SECTION 1780(d)**

14  vs.

15  BED BATH & BEYOND INC.,
    a New York corporation; and
16  DOES 1-50, inclusive,

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

I, Robert Turnier, declare as follows:

1.  I submit this declaration pursuant to Section 1780(d) of the Cal. Civ. Code.

2.  Defendants have done and are doing business in San Diego County, including the marketing and sale of domestics merchandise and home furnishings.  All of my dealings with defendants occurred while I was in San Diego County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on January 14, 2020, at San Diego, California.


_____
ROBERT TURNIER

1

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7068 |

| PLAINTIFF(S) / PETITIONER(S):   Robert Turnier |
|---|
| DEFENDANT(S) / RESPONDENT(S): Bed Bath & Beyond Inc |

| TURNIER VS BED BATH & BEYOND INC [E-FILE] |
|---|

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE | CASE NUMBER: 37-2020-00002499-CU-BT-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Richard S. Whitney                                    Department: C-68

**COMPLAINT/PETITION FILED:** 01/15/2020

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 11/06/2020 | 10:00 am | C-68 | Richard S. Whitney |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com.  Refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases or guidelines and procedures.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2020-00002499-CU-BT-CTL      CASE TITLE: Turnier vs Bed Bath & Beyond Inc [E-FILE]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
- (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
- (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
- (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

STREET ADDRESS:   330 West Broadway

MAILING ADDRESS:   330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME:   Central

PLAINTIFF(S):   Robert Turnier

DEFENDANT(S): Bed Bath & Beyond Inc

SHORT TITLE:   TURNIER VS BED BATH & BEYOND INC [E-FILE]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2020-00002499-CU-BT-CTL |
|---|---|

Judge: Richard S. Whitney                                    Department: C-68

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                                ☐ Binding private arbitration

☐ Voluntary settlement conference (private)      ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                   ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                    Date: _____

_____                          _____
Name of Plaintiff                                Name of Defendant

_____                          _____
Signature                                        Signature

_____                          _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____                          _____
Signature                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 01/15/2020                                _____
                                                 JUDGE OF THE SUPERIOR COURT

## ELECTRONIC FILING REQUIREMENTS OF THE

## SAN DIEGO SUPERIOR COURT – CIVIL DIVISION

These requirements are issued pursuant to California Rules of Court ("CRC", rules 2.250 et seq., Code of Civil Procedure §1010.6, and San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.

Effective November 1, 2013, documents that are determined to be unacceptable for eFiling by the Court due to eFiling system restrictions or for failure to comply with these requirements will be rejected subject to being allowed to be filed nunc pro tunc to the original submittal date upon ex-parte application to the court and upon good cause shown.

It is the duty of the plaintiff (and cross-complainant) to serve a copy of the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases, and Electronic Filing Requirements of the San Diego Superior Court with the complaint (and cross-complaint).

## PERMISSIVE eFILING

Effective March 4, 2013, documents may be filed electronically in non-mandated civil cases in the Central Division where either: (1) the case is first initiated on or after March 4, 2013; or (2) the case has been imaged by the court and it displays as imaged on the case title in the Court's Register of Actions. Documents may be filed electronically in non-mandated civil cases in the North County Division where either: (1) the case is first

initiated on or after June 30, 2014; or (2) the case has been imaged by the court and it displays as imaged on the case title in the Court's Register of Actions.

## MANDATORY eFILING

The case types that shall be subject to mandatory eFiling are: civil class actions, consolidated and coordinated actions where all cases involved are imaged cases, and actions that are provisionally complex under CRC 3.40 – 3.403 (as set forth in the Civil Case Cover Sheet, Judicial Council form CM-010 – including Construction Defect actions). "Complex cases" included in mandatory eFiling include Antitrust/Trade Regulation, Mass Tort, Environmental/Toxic Tort, and Securities Litigation cases, as well as insurance coverage claims arising from these case types.

Effective June 2, 2014 Construction Defect and other cases, previously electronically filed through File&Serve Xpress (fka LexisNexis File&Serve), must be electronically filed through the court's Electronic Filing and Service Provider, One Legal. Documents electronically filed in Construction Defect and other cases prior to June 2, 2014 will be maintained in the File&Serve Xpress system and can be viewed via a File&Serve Xpress subscription or on the Court's internal CD/JCCP Document viewer kiosk located in the Civil Business Office, Room 225 of the Hall of Justice (2nd floor).

For cases of the type subject to mandatory eFiling that are initiated on or after March 4, 2013, all documents must be filed electronically, subject to the exceptions set forth below. All documents electronically filed in a mandatory eFile Construction Defect/JCCP case must be electronically served on all parties in the case pursuant to CRC 2.251(c).

The court will maintain and make available an official electronic service list in Construction Defect/JCCP cases through One Legal. This is the service list the court

will use to serve documents on the parties.  (See CRC 2.251(d).)  It is the responsibility of the parties to provide One Legal their correct contact information for the service list in each eFiled case in which they are involved. New parties who file and/or enter a case must provide One Legal with their electronic service address for that case within 7 days of the filing of or their joining the case. All parties must notify One Legal of any changes to that address, within 7 days of the change, should a change occur during the pendency of the action. (See CRC 2.251(f)(1).)  Failure to keep the official list updated may result in the court being unable to provide notice to a non-complying party of upcoming hearings, orders, and other proceedings.

All documents must be filed electronically in cases designated for mandatory efiling, subject to the exceptions set forth below.

A party may request to be excused from mandatory electronic filing and/or service requirements.  This request must be in writing and may be made by ex-parte application to the judge or department to whom the case is assigned.  The clerk will not accept or file any documents in paper form that are required to be filed electronically, absent a court order allowing the filing.

Self-represented litigants are not required to eFile or electronically serve documents in a mandatory eFile case; however, they may eFile and electronically serve documents if they choose to do so and/or are otherwise ordered to eFile and/or electronically serve documents by the court.

**REQUIREMENTS FOR ALL eFILERS** eFile documents can only be filed through the court's Electronic Filing and Service Provider (the "Provider").  See www.onelegal.com.

eFilers must comply with CRC 2.250 – 2.261. Also, all documents electronically filed must be in a text searchable format, i.e., OCR. The court is unable to accept documents that do not comply with these requirements, or documents that include but are not limited to: digitized signatures, fillable forms, or a negative image.

eFilers are required to enter all parties listed on the document being filed, if the party is not already a part of the case. (If the filer is submitting a new complaint, ALL parties must be entered.) If all parties are not entered, the transaction will be rejected.

Documents that contain exhibits must be bookmarked, as set forth on the Provider's site. Documents not so bookmarked are subject to rejection. Moving papers with exhibits that are not bookmarked may be rejected and/or not considered. (See CRC 3.1110(f).)

Exhibits to be considered via a Notice of Lodgment shall not be attached to the electronically filed Notice of Lodgment; instead, the submitting party must provide the assigned department with hard copies of the exhibits with a copy of the Notice of Lodgment that includes the eFiling Transaction ID # noted in the upper right hand corner and hard copies of the exhibits.

Exhibits to declarations that are real objects, i.e. construction materials, core samples, etc. or other documents, i.e. plans, manuals, etc., which otherwise may not be comprehensibly viewed in an electronic format must be lodged and will not be filed.

All documents must be uploaded as individual documents within the same transaction, unless filing a Motion. [Example: A Request to Waive Court Fees must be uploaded separately from the document to which it applies, i.e. complaint, answer or other

responsive pleading, motion, etc...]  If filing a notice of motion, all documents can be scanned and uploaded as one document under a filing that most closely captures the type of motion.  All filings and exhibits within these filings must be bookmarked.

Unless otherwise required by law, per CRC 1.20(b) only the last four digits of a social security or financial account number may be reflected in court case filings.  Exclusion or redaction is the responsibility of the filer, not the clerk, CRC 1.20(b)(3).  Failure to comply with this requirement may result in monetary sanctions, CRC 2.30(b).

Proposed filings, such as proposed court orders and amended complaints, should be submitted as an exhibit and then re-submitted as a separate and new eFiling transaction after the Court has ruled on the matter to which the proposed document applies.  See also CRC 3.1312.

Any document filed electronically shall be considered as filed with the Clerk of the Superior Court when it is first transmitted to the vendor and the transmission is completed, except that any document filed on a day that the court is not open for business, or after 11:59:59 p.m. (Pacific Time) on a day the court is open for business, shall be deemed to have been filed on the next court day.

Electronically filed documents must be correctly named and/or categorized by Document Type.  The lead document must also be designated appropriately, as the lead document determines how the transaction will be prioritized in the work queue. Failure to correctly name the document and/or designate the lead document appropriately may result in a detrimental delay in processing of the transaction.

Revised January 2018

Please be advised that you must schedule a motion hearing date directly with the Independent Calendar Department. A motion filed without an appointment, even when a conformed copy of the filing is provided by the court, is not scheduled and the hearing will not occur.

If a hearing is set within 2 court days of the time documents are electronically filed, litigant(s) must provide hard copies of the documents to the court. Transaction ID numbers must be noted on the documents to the extent it is feasible to do so. Hard copies for Ex Parte hearings must be delivered directly to the department on or before 12 Noon the court day immediately preceding the hearing date.

An original of all documents filed electronically, including original signatures, shall be maintained by the party filing the document, pursuant to CRC 2.257.

## DOCUMENTS INELIGIBLE FOR ELECTRONIC FILING

The following documents are **not eligible for eFiling** in cases subject to either mandatory or permissive filing, and shall be filed in paper form:

- Safe at Home Name Change Petitions
- Civil Harassment TRO / RO
- Workplace Violence TRO / RO
- Elder Abuse TRO / RO
- Stand alone exhibits
- Transitional Housing Program Misconduct TRO / RO
- School Violence Prevention TRO / RO
- Out-of-State Commission Subpoena
- Undertaking / Surety Bonds
- Request for Payment of Trust Funds
- Notice of Appeal of Labor Commissioner

- Abstracts
- Warrants
- Settlement Conference Briefs (to be lodged)
- Confidential documents lodged conditionally under seal
- Interpleader actions pursuant to CC §2924j

The following documents **may be filed in paper form**, unless the court expressly directs otherwise:

- Documents filed under seal or provisionally under seal pursuant to CRC 2.551 (although the motion to file under seal itself must be electronically filed)

## DOCUMENTS DISPLAYED ON THE PUBLIC-FACING REGISTER OF ACTIONS

Any documents submitted for eFiling (and accepted) will be filed and displayed on the San Diego Superior Court's public-facing Register of Actions with the exception of the following documents:

- CASp Inspection Report
- Confidential Cover Sheet False Claims Action
- Confidential Statement of Debtor's Social Security Number
- Financial Statement
- Request for Accommodations by Persons with Disabilities and Court's Response
- Defendant/Respondent Information for Order Appointing Attorney Under Service Members Civil Relief Act
- Request to Waive Court Fees
- Request to Waive Additional Court Fees

Documents not included in the list above, that are intended to be kept confidential, should NOT be eFiled with the court.

Revised January 2018

F I L E D
Clerk of the Superior Court

DEC 3 1 2019

By: A. HUSTED, Deputy

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO

IN RE PROCEDURES REGARDING
ELECTRONICALLY IMAGED COURT
RECORDS, ELECTRONIC FILING, AND
ACCESS TO ELECTRONIC COURT
RECORDS IN CIVIL AND PROBATE
CASES

GENERAL ORDER OF THE
PRESIDING DEPARTMENT

ORDER NO. 010120-22

THIS COURT FINDS AND ORDERS AS FOLLOWS:

1. ELECTRONIC FILING AND IMAGING PROGRAM

On August 1, 2011, the San Diego Superior Court ("court") began an Electronic Filing and Imaging Pilot Program (the "Program" or "Imaged Program") designed to reduce paper filings and storage, facilitate electronic access to civil court files, and allow remote electronic filing ("E-File" or "E-Filing") of papers in civil cases. The ultimate goal of the Program is to create a paperless or electronic file in all civil cases, as well as in other case categories. The Program has since been expanded to other divisions as well as to probate cases.

The Program is being implemented in phases:

Phase One: The court began scanning all papers in newly filed cases in designated divisions and departments. The imaged documents are stored in an electronic court file that can be viewed in the Business Offices and are accessible remotely through the Register of Actions on the court's website as set forth below. Imaged Program cases that are reassigned or transferred to

a department outside of the Program may be removed from the Program and converted to a paper filing system.

Phase Two:  E-Filing access was implemented to allow E-Filing by counsel and parties through the court's E-File Service Provider in designated case types.

Phase Three:  On October 2, 2017, the Imaged Program expanded to small claims cases. All new small claims cases filed on or after October 2, 2017, are imaged and the documents are being stored in an electronic court file that is available for viewing in all of the court's Business Offices.

### 2. THE ELECTRONIC COURT FILE IN IMAGED CASES IS THE OFFICIAL COURT RECORD

Pursuant to Government Code section 68150 and California Rules of Court ("CRC"), rule 2.504, the electronic court file in Imaged Program cases is certified as the official record of the court.  The paper filings that are imaged and stored electronically will be physically stored by the court for 30 days after filing, after which time they will be shredded and recycled, except for original wills and bonds in probate cases, which will be physically retained by the court for the period required by law.  During this 30-day period, these documents will not be stored in a manner that will allow a party or its attorney to access them, and access will only be granted by order of the court upon a showing of good cause.

### 3. CIVIL AND PROBATE CASES INCLUDED IN THE PROGRAM

The following cases have been or will be imaged and stored in an electronic court file, and are considered Imaged Program cases:

a.    Civil cases initiated after a particular department or division began participating in the imaging program;

b. Civil class actions, construction defect cases, JCCP cases, consolidated and coordinated actions where all cases involved are imaged cases, and actions that are provisionally complex under CRC, rule 3.40-3.403 (as set forth in the Civil Case Cover Sheet).  "Complex cases" include antitrust/trade regulation, mass tort,

environmental/toxic tort, and securities litigation cases, as well as insurance
coverage claims arising from these case types;

   c. Probate cases filed on or after March 1, 2012 and all probate cases initiated
prior to March 1, 2012 in which the Court has notified the parties that the case has
been back scanned;

   d. All new civil and probate cases; and,

   e. All small claims cases filed on or after October 2, 2017.

## 4. MANDATORY AND PERMISSIVE ELECTRONIC FILING

   Mandatory electronic filing through the court E-File Service Provider One Legal is
required for all case types listed in paragraph 3.b. above, including construction defect and other
cases previously filed through File&Serve Xpress (fka LexisNexis File&Serve).   Further
information can be found on the court's website, at www.sdcourt.ca.gov.

   Electronic filing is encouraged in all other imaged cases.

## 5. GENERAL E-FILING REQUIREMENTS

   Documents can only be electronically filed through the court's electronic service provider
One Legal (the "Provider"). E-file Provider information is available on the court's website.

   All E-filers shall comply with CRC, rules 2.250-2.261 and California Code of Civil
Procedure ("CCP") § 1010.6. All documents E-filed with the court must be in a text searchable
format, i.e., OCR. The court is unable to accept documents that do not comply with these
requirements, or documents that include but are not limited to: digitized signatures, fillable forms,
or a negative image. E-filers are required to comply with the provisions of the E-Filing
Requirements Documents, located on the Court's website at www.sdcourt.ca.gov. Civil E-Filing
Requirements can be found on the Civil Division's E-Filing page; Probate E-Filing Requirements
can be found on the Probate Division's E-Filing page.

   The receipt and filing of documents submitted electronically is governed by CCP 1010.6
and CRC, rule 2.259. The Court's filing deadline is 11:59:59 p.m. (Pacific Time) on court days.
The electronic transmission of a document to the Court can take time, so waiting until shortly
before the deadline to electronically transmit a filing is not advised, as it could be received by the

court after 11:59:59 p.m. and deemed filed the next court day. Per CRC, rule 2.259(a)(4), the **filer** is responsible for verifying that the court received and filed any document submitted electronically. Please see One Legal's website for filing instructions. To the extent any San Diego Superior Court Local Rules set forth a different time deadline for filing electronic documents, the applicable portions of the Local Rules are no longer valid.

Additional and more specific information on electronic filing can be found on the court's website at www.sdcourt.ca.gov.

### 6. FILING AND SERVICE REQUIREMENTS IN IMAGED CASES

a. Service of Notice: All parties filing new actions assigned to the imaging program shall serve on all parties a copy of the "Notice of Assignment to Imaging Department" with the complaint, cross-complaint, petition, claim, or other case initiating pleading. A copy of this notice will be provided to the filing party by the court clerk when case originating filings are processed.

b. "Imaged" Identifier: On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

c. Original Documents: Original underlying documents, other than wills and bonds in probate cases, that are relevant to a case should not be attached as exhibits to filed documents or filed in any other manner, as these documents will be imaged and the paper filings destroyed in accordance with this Order (except for those documents set forth in paragraph 6.d. below). Any original document, other than a will or bond in a probate case, that is included in a **filed** document in a case within the Program will be imaged and destroyed in accordance with this Order. Original documents may be **lodged** with the court, as necessary, under the procedures set forth in paragraphs 6.g. and 6.h. below.

d. Proposed Orders: Proposed orders should only be submitted with initial pleadings for an ex parte hearing, and should not be submitted for a law and motion

1    hearing until after the hearing is completed.

2    e. Exhibits: Any exhibits attached to a pleading presented for filing must have

3    the exhibit tabs located at the bottom of the respective documents, in accordance

4    with California Rules of Court, rule 3.1110(f), and each exhibit must be preceded

5    by a cover page that contains solely the word "Exhibit" and the exhibit's identifying

6    number or letter.

7    f.    Confidential Documents:    Any documents classified or considered

8    confidential pursuant to statute, rule of court or local rule shall be filed with the

9    court and will be imaged and destroyed in accordance with this order. Access to

10   the imaged confidential document(s) shall be as set forth in paragraph 7.d. below.

11   g. Civil Cases other than Probate:

12   (1) Lodged Documents:

13   The Notice of Lodgment itself must be filed with the court. In accordance

14   with California Rules of Court, rule 3.1302(b), the documents submitted

15   with the notice must be lodged and not filed. The lodged documents will

16   not be imaged, will not be part of the official court file, and will be

17   returned in the manner requested or recycled if no manner of return is

18   specified.

19   (2) Documents in Support of Judgments:

20   Applications for entry of a judgment that include an instrument, contract,

21   or written obligation will have the relevant document(s) cancelled and

22   merged if the judgment is entered, in accordance with California Rules of

23   Court, rule 3.1806, after which the document will then be imaged and

24   maintained in the electronic court record. The submitted document(s) will

25   then be returned to the proffering party for safe-keeping. Parties must

26   provide a suitable method of return along with the submitted document(s).

27   If no method of return is included, the document(s) will be shredded and

28   recycled.

h. Probate Cases:

(1) Lodged Documents:

(a) The Notice of Lodgment itself must be filed with the court. In accordance with California Rules of Court, rule 3.1302(b) and San Diego Superior Court Rule 4.3.2 (F), the documents submitted with the notice must be lodged and not filed. The lodged documents will not be imaged, will not be part of the official court file, and will be returned in the manner requested or recycled if no manner of return is specified.

(b) A party filing a motion or other paperwork that refers to a trust or will document that was previously lodged with the petition must separately lodge the trust or will with these later-filed papers, in accordance with the procedures in paragraph 6.h.(1)(a) above.

(c) In support of an accounting of assets as required by Probate Code section 2620 or an interim accounting required by San Diego Superior Court Rule 4.15.2, the originals of account statements, closing escrow statements, and bill statements for a residential or long-term care facility shall be lodged with the court, in accordance with the procedures in paragraph 6.h.(1)(a) above. The lodged documents will not be imaged, will not be part of the official court file, and will be returned in the manner requested after the court's determination of the accounting has become final.

(2) Inclusion of Petition's ROA Number on All Pleadings:

Parties are ordered to comply with San Diego Superior Court Rule 4.3.1(B) and include the Petition's Register of Action (ROA) number directly below the case number on all subsequently filed pleadings related to that Petition.

7. ENHANCED ELECTRONIC ACCESS TO OFFICIAL COURT FILE AND COURT DOCUMENTS

a. Access in Clerk's Business Offices:  Public kiosks providing free access to the official electronic record of the court files for cases being handled under the Program are available in the below Business Offices:

- Hall of Justice Civil Business Office, located at 330 West Broadway, San Diego, California 92101;
- East County Family Business Office, located at 250 E. Main Street, El Cajon, California, 92020;
- South County Family Business Office, located at 500 Third Avenue, Chula Vista, California, 91910;
- Central Courthouse, Probate Business Office, located at 1100 Union Street, San Diego, California, 92101; and
- North County Civil Business Office, located at 325 S. Melrose Drive, Vista, California, 92081.

The public may access these files and view all public portions of the files just as they currently can in the paper court files.  If there are people waiting to use the kiosks, a time limit of 20 minutes will be imposed.  Additional time will be permitted after waiting in line to use one of the kiosks again.  Any changes to this policy will be made by the Presiding Judge of the court and the new policy will be posted in the applicable Business Offices.

b. Notice Regarding Electronic Access:  In accordance with California Rules of Court, rule 2.504(d), the public accessing court records electronically, are advised the Manager of Central Court Civil and Family Operations, Summer Travis, is the court staff member who may be contacted about the requirements for accessing the court's records electronically in all divisions of the court supporting imaging and E-filing.

c. Copyright and other proprietary rights may apply to information in a case file, absent express grant of additional rights by the holder of the copyright or other proprietary right. In this regard, you are advised:

(1) Use of such information in a case file is permissible only to the extent permitted by law or court order; and

(2) Any use inconsistent with proprietary rights is prohibited.

d. Access to Confidential Documents: Court documents classified or considered confidential pursuant to statute or rule of court shall remain confidential and may not be released except to the extent necessary to comply with the law.

e. The electronic records of cases within the Program available for viewing in the Business Offices are the official records of the court. There is no charge for accessing or viewing court files in the Business Offices. Copies of any documents in an electronic court file may be obtained by paying the copy fees of $0.50 per page (Govt. Code § 70627(a)). Certified copies may be obtained by payment of a $25.00 fee (Govt. Code § 70626(a)(4)). Additional instructions about obtaining printed copies of records from the electronic court file will be provided at the kiosk locations in the applicable Business Offices.

f. Any person who willfully destroys or alters any court record maintained in electronic form is subject to the penalties imposed by Government Code section 6201.

g. No person shall photograph or otherwise record any digital images of documents displayed on the kiosk screens in the Business Offices.

h. Remote Electronic Access of Program Cases: Court documents from records of cases within the Program are available in electronic format for viewing and printing remotely to the extent permitted by California Law and/or California Rules

///

///

///

1   of Court, rule 2.503(b), by visiting the court's website at www.sdcourt.ca.gov and

2   paying the required fees.

3   This Order shall expire on December 31, 2020, unless otherwise ordered by this court.

4   IT IS SO ORDERED.

5

6   Dated: December 31, 2019

7   **HON. LORNA A. ALKSNE**
    **PRESIDING JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28